UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KELVIN ORTIZ RIVERA,**

 **Plaintiff,**

v.            Case No: 6:22-cv-1020-RBD-RMN

**STEPP'S TOWING SERVICE, INC.,**

 **Defendant.**
_____/

**JOINT MOTION FOR APPROVAL OF SETTLEMENT
AND DISMISSAL WITH PREJUDICE
AND INCORPORATED MEMORANDUM OF LAW**

  The Parties, through their undersigned counsel, jointly move for Court approval of the mutually agreed-upon terms of settlement in this action and for dismissal with prejudice of the instant action. In further support hereof, the Parties state as follows:

  1. Plaintiff, KELVIN ORTIZ RIVERA, filed a lawsuit alleging violations of the Fair Labor Standards Act (the "FLSA") against Defendant, STEPP'S TOWING SERVICE, INC., in the United States District Court, Middle District of Florida, Orlando Division on June 9, 2022. (D.E. 1).

  2. Plaintiff, a former tow driver for Defendant, contends he was misclassified as an exempt employee and paid only "straight time" for hours worked in excess of forty (40) in a workweek.

1

3. Defendant contends that Plaintiff was exempt from the FLSA's overtime requirements pursuant to one or more exemptions, including the Section 7(i) exemption set forth in 29 U.S.C. § 207(i) and the "motor carrier" exemption set forth in 29. U.S.C. § 213(b)(1).

4. The Parties mediated this matter beginning on April 6, 2022, with mediator Travis R. Hollifield, Esq., and continued their negotiations through the mediator for several days thereafter.

5. To avoid the risks and unknowns, as well as the costs of protracted litigation, the Parties desire to fully and finally resolve this action with prejudice.

6. After a full review of the facts and information, the Parties, who have been represented by counsel at all times, agree that the negotiated terms of the settlement represent a fair, reasonable, and just compromise of disputed issues.

7. A copy of the FLSA Settlement Agreement executed by the Parties is attached hereto.

8. For the reasons set forth below, the Parties respectfully request that the Court approve the settlement set forth in the FLSA Settlement Agreement and dismiss the instant lawsuit with prejudice.

## MEMORANDUM OF LAW

There are two ways in which claims for overtime compensation under the FLSA may be compromised or released by an employee. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The first permits resolution of claims under the supervision of the United States Department of

Labor. *Id.* The second permits judicial approval of disputed claims on terms that are fair and reasonable:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354. When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005).

## I. **The Settlement.**

The FLSA Settlement Agreement is attached hereto as Exhibit 1. Under the terms of the Settlement Agreement, Defendants shall pay Plaintiff a total of $20,000.00 ($10,000.00 in allegedly unpaid overtime compensation, and an equal amount, $10,000.00, in alleged liquidated damages). Further, Defendant will pay Plaintiff's counsel $10,000.00 in attorneys' fees and costs.

Plaintiff was a tow driver from September 16, 2016, through September 19, 2022. At issue in this case is whether Plaintiff was entitled to an overtime premium for hours worked in excess of 40 per week during the period he was assigned to

work at Orlando International Airport (the "airport"). Beginning in 2018, the airport contracted with Defendant to provide tow services on a 24-hour basis on airport property. Plaintiff accepted an assignment to provide coverage for 12-hour shifts at the airport. Plaintiff earned a commission of 50% of the billable service hours Defendant charged the airport for coverage during Plaintiff's shifts. Until June 28, 2019, the airport paid Defendant $30.00 per billable service hour for coverage, and Defendant paid Plaintiff a commission of 50% of that amount. From approximately June 29, 2019, though February 28, 2022 (the date Defendant's contract with the airport ended), the airport paid Defendant $33.00 per billable service hour for coverage and Defendant continued to pay Plaintiff a commission at a rate of 50% of that amount.

Plaintiff contends he worked between 60 and 84 hours per week. He seeks the "half-time" rate of his regular rate of pay for overtime hours worked, liquidated damages, and attorneys' fees and costs. Plaintiff contends he is owed $22,947.03 in unpaid overtime compensation. *See* D.E. 15-1, Answers to Court's Interrogatories to Plaintiff.

As mentioned above, Defendant counters that Plaintiff was exempt from the FLSA's overtime requirements pursuant to the Section 7(i) and/or motor carrier exemptions. Additionally, Defendant asserts that although Plaintiff was scheduled to provide coverage at the airport during 12-hour shifts, the hours he spent at his home or tending to personal matters during these shifts should not be counted as

"hours worked" and, thus, the number of hours Plaintiff actually worked were less than he claims.

The Settlement provides Plaintiff with slightly less than one-half of the overtime compensation and liquidated damages he seeks. The Settlement also provides that Defendant will pay Plaintiff's counsel the sum total of $10,000.00 in fees and costs. Plaintiff's fees and costs were negotiated separately from the amount payable to Plaintiff under this settlement, and the Parties stipulate this sum is "reasonable" in light of the stage of the proceedings and the work performed to date by Plaintiff's counsel.

## II.   A "Bona Fide" Dispute Exists.

*Lynn's Food Stores* permits approval of a compromise resolving a "bona fide dispute over FLSA provisions." *Dees*, 706 F. Supp. at 1241. Parties requesting review of an FLSA settlement must provide enough information to the Court to examine the bona fides of the dispute. *Id.* Plaintiff contends he was misclassified as an exempt employee and was paid only straight time for all hours worked, including overtime hours. Defendant contends Plaintiff fell within the Section 7(i) and/or motor carrier exemptions. Defendant further argues that the time Plaintiff spent at his home or tending to personal matters during his shifts should not be counted as "hours worked."

### A.   The Section 7(i) Exemption.

Section 7(i) of the FLSA sets forth an exemption for employees of retail or service establishments who are compensated primarily on a commission basis and

5

whose commissions when converted to an hourly rate equivalent exceed one-and-one-half times the federal minimum wage. *See* 29 U.S.C. § 207(i). The Parties disagree as to whether Plaintiff's compensation while he was assigned to the airport, *i.e.*, a percentage of the billable service hours Defendant charged to the airport, amounted to "commissions," as required for the Section 7(i) exemption to apply. The FLSA does not define "commissions," and the Parties agree there is no binding Eleventh Circuit case law on point that addresses this specific issue.

> B.    The "Motor Carrier" Exemption.

There is also a dispute as to whether the "motor carrier" exemption applied to Plaintiff. The FLSA exempts from its overtime provisions "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49 [the federal Motor Carrier Act] [.]" 29 U.S.C. § 213(b)(1). The "motor carrier" exemption may apply to drivers who make purely intrastate trips if they can reasonably expect to have been called upon to make an interstate trip at any time. *See Chao v. First Class Coach Co.*, 214 F. Supp. 2d 1263, 1273-74 (M.D. Fla. 2001) ("... the fact that the 'I-Ride' drivers [drivers of the trolley-bus service operating on International Drive] are *subject to* being called upon to drive interstate routes at any time is also adequate to exempt them from the FLSA's overtime provisions.") (emphasis added). Here, Plaintiff and Defendant disagree over whether he could have reasonably expected to be called upon to make one of Defendant's interstate trips.

### C. "Hours Worked."

Finally, there is a dispute over the number of hours Plaintiff worked. Plaintiff was assigned to cover 12-hour shifts. Defendant, however, contends the hours Plaintiff spent during these shifts at his home or tending to personal business should not be counted as "hours worked." Defendant relies on GPS records and in-cab recordings to show that there were times during Plaintiff's shifts that he was not working. To parse through these records to establish the exact number of hours that Plaintiff was at home or tending to personal matters would require the expenditure of significant time and resources. The settlement of this matter, however, fairly resolves the bona fide disputes between the Parties.

### III. All Factors Relevant to the "Fairness" of the Settlement Weigh in Favor of Approval.

Although *Lynn's Food Stores* determined that the settlements at issue in that case were unfair, it did not specify criteria for evaluating the fairness of proposed compromises under different circumstances. *See Dees*, 706 F. Supp. 2d at 1240. This Court has noted that the factors for evaluating the fairness of a class action settlement provide a familiar starting point, including:

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*Id*. at 1241 (citations omitted). Here, all factors weigh in favor of approval of the settlement.

    a. <u>*There is no fraud or collusion behind the settlement.*</u>

Courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to plaintiffs seemed fair. *See Bonilla v. Shiner's Car Wash*, 2014 U.S. Dist. LEXIS 66297, at * 5 (M.D. Fla. 2014). Here, each party was independently represented by counsel with substantial experience litigating FLSA claims.  There was no fraud or collusion behind the settlement.

    b. <u>*The complexity, expense, and length of future litigation militate in favor of the settlement.*</u>

Litigating, rather than settling this matter, would require both sides to incur significant additional costs and fees.  Both sides would bear some risk if the case proceeds to trial. Plaintiff would risk recovering nothing, and Defendant would risk the possibility of an adverse judgment and fee award. It is in the best interests of all Parties to settle, rather than litigate, this matter.

    c. <u>*The stage of the litigation weighs in favor of approval of the settlement.*</u>

This case is in a relatively middle stage. Trial is not scheduled to take place until November 2023. The discovery period has not yet closed as of the date of the filing of this motion, and neither side has filed a motion for summary judgment yet. The Parties conducted extensive and voluminous written discovery and were in the process of setting depositions when mediation occurred.  If the Parties are required to litigate, each side will incur fees and costs that will quickly exceed the

amount of overtime compensation at issue. Thus, the stage of the litigation weighs in favor of approval of the settlement.

    *d.* *Plaintiff's probability of success on the merits is uncertain.*

Plaintiff's probability of success on the merits is not a certainty. Defendant denies Plaintiff's allegations and contends Plaintiff was properly classified as an exempt employee and paid appropriately.

    *e.* *The Parties weighed the opinions of counsel in deciding whether to settle.*

The Parties agree they weighed the opinions of their respective counsel in deciding whether to settle.

### IV. The Attorneys' Fees to be Paid as Part of the Settlement are Fair and Reasonable.

The *Dees* court noted that a compromise must award the plaintiff's counsel a reasonable fee. *See Dees*, 706 F. Supp. 2d at 1243. A court need not, however, scrutinize the amount of a plaintiff's attorneys' fee when it was agreed upon separately and without regard to the amount paid to the plaintiff, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *see also Dees*, 706 F. Supp. 2d at 1243 (quoting *Bonetti*). Such is the case here. The fee to be paid under this settlement to Plaintiff's counsel, $10,000.00, was negotiated separately from the amount to be paid to Plaintiff. The settlement is reasonable on its face, including the fee amount. As stated above, Plaintiff's fees

and costs were negotiated separately from the amount payable to Plaintiff under this settlement, and the Parties stipulate this sum is "reasonable" in light of the stage of the proceedings and the work performed to date by Plaintiff's counsel.

## V.     The Mutual General Release Does Not Affect the Fairness of the Settlement.

Courts in the Middle District of Florida have approved FLSA settlement agreements with general releases where the parties provide the court with sufficient information, such as detailed explanations in their motions or affidavits from plaintiffs, regarding any other claims that the plaintiffs are knowingly releasing, including the fair value of such claims, whether those claims are being compromised and, if so, the reasons for such compromise and the consideration given in exchange for the general release. *See, e.g., Hathaway v. Hemp. Hop,* LLC, 2022 U.S. Dist. LEXIS 40798 (M.D. Fla. Mar. 7, 2022).

The release here is mutual. The consideration for each Party's release of claims is the release by the opposing Party of any claims it has or may have against the other. The mutual release will ensure a sense of finality for both Parties. In short, this is not the type of one-sided, pervasive release that courts such as *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351-52 (M.D. Fla. 2010), have found to be unfair.

## CONCLUSION

The Court should approve the settlement of this action. The settlement sum fairly balances the amounts Plaintiff would seek at trial against the risk that Plaintiff might recover nothing if the case were to proceed.  Additionally, Plaintiff's

counsel will receive a reasonable fee in connection with the settlement. All factors germane to the Court's consideration of the fairness of the settlement weigh in favor of approval.

*WHEREFORE*, the Parties respectfully request that this Honorable Court (i) GRANT this Motion; (ii) APPROVE the settlement of this matter; and (iii) ENTER an Order dismissing this case with prejudice.

Respectfully submitted this 4th day of May, 2023.

| | |
|---|---|
| MORGAN & MORGAN, P.A.<br>20 N. Orange Avenue, 15th Floor<br>Orlando, Florida 32801<br>Telephone: (407) 420-1414<br>Facsimile: (407) 245-3401<br>Primary: RMorgan@forthepeople.com | KEITH L. HAMMOND, P.A.<br>Hammond Law Center<br>P.O. Box 470361<br>Celebration, Florida 34747<br>Telephone: (407) 730-9909<br>Facsimile: (800) 861-0585<br>Primary: keith@hammondlawcenter.com<br>Secondary: admin@hammondlawcenter.com |
| By: */s/ C. Ryan Morgan*<br>C. Ryan Morgan<br>Fla. Bar No. 0015527<br>Attorney for Kelvin Ortiz Rivera | By: */s/ Keith L. Hammond*<br>Keith L. Hammond<br>Fla. Bar No. 0164798<br>Attorney for Stepp's Towing Service, Inc. |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of May, 2023, the foregoing document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to C. Ryan Morgan, Esq., Morgan & Morgan, P.A.; RMorgan@forthepeople.com.

By: */s/ Keith L. Hammond*
Keith L. Hammond